In the Matter of the Application of ANTON STAUDT, Acting in His Capacity as Rector of the Oensbach Roman Catholic Church of Baden, Germany, Residuary Legatee and Devisee of PETER KUNZENBACHER, Deceased, Appellant, for a Determination as to the Construction or Effect of the Last Will and Testament of PETER KUNZENBACHER, Deceased.

MICHAEL PILLER and Another, Respondents.

Second Department, March 2, 1933.

*James Harte Levenson*, for the appellant.

*Edward J. Bausch*, for the respondents.

DAVIS, J. The appellant is aggrieved by the decree of the Surrogate's Court of Queens county construing the provisions of the will of Peter Kunzenbacher, deceased.

In this will, executed March 29, 1927, there were, first, provisions for the payment of debts and directions concerning the funeral and burial of the deceased by a firm of undertakers named, with a limitation on the expense thereof. Then there were legacies given to a niece and other persons (probably friends, though not so designated). Then followed:

"*Seventh*, all the rest, remainder and residue of my capital, wheresoever same may be situated, and of which I may die Seized and possessed I give, devise and bequeath to Oensbach Roman Catholic Church of Baden, German [*sic*].

" *Eighth,* I give, devise and bequeath to my Executors hereinafter named, my property at 463 and 465 Fairview Avenue, * * * Ridgewood, * * * Michael Piller of 1930 Himrod Street, Ridgewood, Queens and Joseph Balzer of 1872 Himrod Street, Ridgewood, Queens, both to share and share alike, and I hereby give my executors full power of sale.

" *Ninth,* I give, devise and bequeath to Amelia Balzer of 1872 Himrod Street, Ridgewood, Queens all household goods of which I may die seized and possessed, with the exception of trunk containing tax papers and bills for property at 463 and 465 Fairview Avenue, Ridgewood, Queens, which I give, devise and bequeath to my executors Michael Piller * * * and Joseph Balzer * * * for their use in maintaining or disposing of property aforesaid. Likewise, I make, constitute and appoint Michael Piller * * * and Joseph Balzer * * * to be Executors * * *."

The residence of the testator is given at 463 and 465 Fairview avenue, Ridgewood, Queens; and it is assumed that the testator and the executors lived in the same neighborhood. The appellant claims that he is the representative of the residuary legatee, the Oensbach church, and entitled to all the real estate as a part of the residuary estate. The executors claim that by the eighth paragraph of the will they were given individually the real estate as tenants in common.

It is admitted that the will was drawn by one of the undertakers given charge of the burial. Admittedly he was an unskilled person; and the lack of legal skill is indicated by reading the provisions of the will. In construing a will where the language is ambiguous and construction is difficult, " courts must seek interpretation and construction * * * where controversy arises, in the light of its own language and the surrounding circumstances, and in the common experiences of mankind. It is an attempt to install the judicial mind in the place and surroundings of the mind of the testator and thus obtain his thoughts and impulses." (*Matter of Barney,* 207 App. Div. 25, 28; affd., 239 N. Y. 584.)

Here we have little to guide us except the bare language of the will. Although opportunity was offered on the trial, neither party attempted to show the place of birth of the testator, his station in life, his relation to those given legacies, or to the church which he apparently made his residuary legatee. Likewise, there was nothing to indicate the relationship of friendship, trust or other obligation to his executors, except the fact that they were so chosen. It is stated in the petition of the appellant " that the testator was a member of the Roman Catholic Faith." There is no proof on that subject. There is nothing to indicate that the testator was

ever a communicant in the particular church mentioned in paragraph " seventh " of the will, though perhaps that fact may be implied. In other words, we have no proof of extrinsic facts or surrounding circumstances that might throw light upon the testator's intent in drafting his will; so we must exercise our judgment in construing it chiefly from the language used therein.

The death certificate made by the department of health of New York city, received in evidence, indicates that the testator was sixty-seven years of age, and that he committed suicide at five A. M. on March 31, 1927 — the second day after making the will. An expert on German law testified that the word " Kapital " has the legal meaning, in respect to wills, of a man's entire property, real and personal. If we assume that the testator was of German birth, as his name would indicate, this may throw some light on the use of the somewhat unusual word " capital " used in paragraph " seventh " in connection with disposing of " all the rest, remainder and residue " of his estate. If that construction be applied, then the eighth paragraph, giving to the executors certain real property " both to share and share alike, and I hereby give my executors full power of sale," would naturally indicate, in spite of the ambiguous language, that only a power of sale was given to them, with equal authority to execute the same; and that the particular property was not intended to pass to the executors individually. This conclusion would be sustained by the fact that it is unusual to make in a will specific devises after the remainder clause, but that naturally a power of sale may follow such clause. Little light can be gained from the ninth paragraph, which gives the trunk containing tax papers and bills for property at 463 and 465 Fairview avenue to the executors, " for their use in maintaining or disposing of property aforesaid." It may indicate that the testator had in mind that some time might elapse before the property was sold, and that in the meantime it should be maintained in a state of repair, and possibly rented until an advantageous sale could be made. The gift of household goods to Amelia Balzer in the same paragraph would indicate that the residuary paragraph, " seventh," was not final and that the testator may have contemplated making further provision concerning his real estate and certain personal property.

Our chief resort in reaching a conclusion must be to the fundamental legal principles to be applied where executors are claiming property as an individual gift. It is the general rule that before a gift to executors *eo nomine* can be held to vest in them individually the intention that it should so vest must be plainly manifested. Such an intention that they shall take in their own right is not imported

even by the circumstances that otherwise the property is undisposed of by the will and as to it the testator must be held to have died intestate. (Davids New York Law of Wills, § 774.)

Generally speaking, the instances in which an executor may be deemed to take a devise individually may be roughly classified as follows: (1) Where there is a clear intent (*Trunkey* v. *Van Sant*, 176 N. Y. 535); (2) where the executors are given a devise or bequest accompanied by precatory words indicating that the testator desires some purpose, generally undisclosed, to be carried out by the executors, in whom he places trust and confidence (*Fairchild* v. *Edson*, 154 N. Y. 199; *Matter of Murray*, 124 App. Div. 548; *Matter of Megrue*, 135 Misc. 16); (3) a gift to some person occupying some confidential or unusual relation, where the utilization of the gift may be expected either for religious purposes or for charity as the testator might wish, or for the general benefit of such person (*Figueira* v. *Taafe*, 6 Dem. 166).

The prevailing rule, subject to the exceptions indicated, is that an executor does not take individually. In *Forster* v. *Winfield* (142 N. Y. 327, 332) EARL, J., says: " Did the testator intend to vest Frederick P. Forster and Henry A. Forster, these plaintiffs, as individuals, absolutely with the title to the land or its proceeds? Before a gift to executors *eo nomine* can be held to vest in them individually the intention that it should so vest must be plainly manifested. In the language here used we find no such intention. He appoints the plaintiffs executors of his will and gives them a power of sale." The same general principle is stated in *Thomas* v. *Anderson* (245 Fed. 642, 644) as follows: " Finally, it is a cardinal rule, well established by authority, that a devise of property to an executor is presumed to be given to him in trust, and not privately, and in order to justify a court in reaching a contrary conclusion there must be language in the will which clearly expresses such an intent." (See, also, *Matter of Ingersoll*, 131 N. Y. 573; *Gross* v. *Moore*, 68 Hun, 412; affd. on opinion below, 141 N. Y. 559; *Christman* v. *Roesch*, 132 App. Div. 22; affd., 198 N. Y. 538.)

We must construe this will in the light of the general rule above stated. We think it is apparent that it was the intent of the testator to give the remainder of his estate (including his real estate) to the Oensbach church; and that as to the real property the executors were given, in somewhat obscure language, a power of sale only, with authority vesting in each equally. If there was such relation between the testator and the executors that it might be expected that he would provide a direct gift to them, the latter have had an opportunity to show it, but deliberately failed to produce any evidence throwing light on such an intent.

Therefore, we reach the conclusion that the residuary estate, including the real property here in question, passed under the terms of the will to the Oensbach church.

The decree should be reversed on the law and the facts, with costs to the appellant payable out of the estate, and the matter remitted to the surrogate with directions to enter a decree in accordance with this opinion.

HAGARTY and TOMPKINS, JJ., concur; KAPPER, J., dissents and votes to affirm, with the following memorandum: In the use of the word " capital " in the seventh clause of the will which follows immediately after the various bequests of money, it is my view that the testator gave to the church the residue of his money, which the petition shows was a substantial sum in excess of the other bequests of money. The devise of the real estate in the eighth clause of the will was to the executors therein named, " both to share and share alike," words which import an absolute devise. The power to sell annexed to the devise appears to be the notion of the draftsman (a layman) that it would enable the devisees to more readily sell the property, but does not take away what seems to me to be an absolute devise without limitation; YOUNG, J., concurs with KAPPER, J.

Decree of the Surrogate's Court of Queens county reversed on the law and the facts, with costs to appellant, payable out of the estate and the matter remitted to the surrogate with directions to enter a decree in accordance with opinion of DAVIS, J.